IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DELTA HEALTH GROUP, INC.,

       Plaintiff,

       v.                               Case No.: 3:05-cv-108/RV/MD

ROYAL SURPLUS LINES INSURANCE CO.,

       Defendant.
_____/

**ORDER**

This declaratory judgment and breach of contract action arises out of an insurance dispute between the plaintiff, Delta Health Group, Inc. ("Delta"), and the defendant, Royal Surplus Lines Insurance Company ("Royal"). There are currently several motions pending before the court. The parties have filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (docs. 40 and 41). Delta has moved to strike the response filed by Royal (doc. 51), and it has moved separately to strike two affidavits that were filed along with that response (doc. 60). After Royal filed "corrected" affidavits, Delta filed a "Notice of Objection" thereto (doc. 74), which will be construed as a third motion to strike. Although the motions to strike have not yet been ruled on or resolved, Delta has recently filed a motion seeking to "renew" those motions (doc. 102). In addition, Delta has moved to amend or supplement its answer and affirmative defenses to Royal's counterclaim (doc. 103).

**I.**      **BACKGROUND**

These facts are taken primarily from the motions for summary judgment. Because neither side has challenged the facts by filing a separate, short and concise statement as required by Northern District of Florida Local Rule 56.1, they

are deemed to be undisputed.[1]

Delta is a corporation organized under the laws of Delaware with its principal place of business in Pensacola, Florida. It owns, operates and manages long-term health care facilities in Florida, Mississippi and Alabama. Dozens of people have made claims and/or filed suit against Delta based on allegations of negligent acts or mistreatment by Delta employees and agents. Although the precise number of claims and suits is unclear, Delta has attached at least forty-one (41) complaints. Royal is an insurance company organized under the laws of Connecticut with its principal place of business in Charlotte, North Carolina. As will be discussed below, Royal (and another insurance company) issued several insurance policies to Delta covering the periods of time when most, if not all, of the lawsuits and claims arose. The scope of that coverage is at issue in this case.

First, Royal issued a professional healthcare liability insurance policy to Delta, Policy Number KZW200091, for the coverage period of April 17, 1998, to April 17, 1999 ("Royal Primary 1"). The following year, Royal issued a second professional healthcare liability insurance policy to Delta, Policy Number KZC521280, for the coverage period of April 17, 1999, to April 17, 2000 ("Royal Primary 2"). Both policies provided coverage for $1,000,000 per "medical incident" (as that term is defined in the policy) and $3,000,000 aggregate for each Delta location, and they are "defense outside indemnity" policies, meaning that defense costs did not erode the limits of indemnity. On January 19, 2000, Royal sent a letter to Delta indicating that it was not going to renew Royal Primary 2 when it was set to expire at 12:01 AM on April 17, 2000.

---

[1] This case has a long and complicated history, and it involves numerous claims and allegations, which, for purposes of this order, need not be set forth in exhaustive detail. This case was also stayed pending the appeal of a related case, Royal Surplus Lines Insurance Company v. Delta Health Group, Inc., Case No. 3:03cv419, as set out *infra* at note 2.

*Case No.: 3:05-CV-108/RV/MD*

Thereafter, Delta sought replacement liability insurance and was eventually able to obtain it from Lexington Insurance Company, which issued Policy Number 7157404 (the "Lexington Policy"). This policy provided continued primary coverage to Delta for the time period of April 17, 2000, to April 17, 2001. However, the Lexington Policy differed from the Royal policies in several important respects, and these differences have generated most of the issues in this litigation. First, the Lexington Policy was a "claims made" policy with limits of $1,000,000 per claim and $3,000,000 aggregate. It provided only a single limit of liability for all locations owned by Delta, in contrast to Royal's "per location" limits. Further, it was an "eroding" policy, meaning that defense costs were not in addition to the indemnity payments. The Lexington Policy coverage was exhausted in short order.

Royal issued two umbrella policies to Delta which afforded excess coverage to Delta above all three above-described primary policies. These policies are as follows: KHN012679, effective November 1, 1998, to November 1, 1999; and KHN014015, effective November 1, 1999, to November 1, 2000 ("Royal Umbrella 2"). Both policies contained limits of $20,000,000 per occurrence and $20,000,000 aggregate. The umbrella policies required that Delta also maintain a minimum schedule of underlying insurance. Specifically, with respect to professional and general liability insurance, the umbrella policies required that Delta carry a minimum underlying insurance of $1,000,000 per occurrence and $3,000,000 aggregate/per location. As set out above, the coverage provided by the Lexington Policy did not meet the minimum amount that was required under Royal Umbrella 2. When Royal learned of this, it notified Delta of its intention to cancel Royal Umbrella 2, due to a material change in the risk assumed by Royal.[2]

---

[2] The two Royal umbrella policies were the subject of a separate litigation, <u>Royal Surplus Lines Insurance Company v. Delta Health Group, Inc.</u>, Case No. 3:03cv419, a case assigned to Judge Richard Smoak of this court. The umbrella

During the period of time between Royal's notice of intent to cancel Royal Umbrella 2 and the actual cancellation date, the parties negotiated new terms under which Royal would stay "on the risk." The result of this agreement was contained in several endorsements to Royal Umbrella 2. These endorsements resulted in three main changes to the original contract: (1) an increased premium; (2) a decrease in umbrella coverage; and (3) a decrease in the amount of underlying insurance required by Royal Umbrella 2 (equal to the amount provided by the Lexington Policy) coupled with the inclusion of a self-insurance period during which Delta was required to provide the first $1,000,000 of coverage for each occurrence in the event that the Lexington Policy was exhausted (which it was).

As already noted, multiple claims of healthcare negligence and mistreatment have been filed against Delta which implicate the coverage of one or more of the above policies during the different coverage periods. Many of the claims --- in fact, apparently all forty-one (41) of the complaints that Delta has identified --- fall within more than one of the primary policy coverage periods, as well as the self-insurance period. Royal alleges, *inter alia*, that Delta agreed to evenly split the defense costs with respect to those claims that implicated any portion of Royal's primary coverage and/or the self-insurance period. According to Royal, this arrangement was the result of a "pure arms-length agreement between Royal and Delta in an effort to comply with the policy requirements." Delta contends, however, that it was coerced into making this agreement. According to Delta, it had no choice but to agree to split defense costs because, if it did not agree, Royal threatened to completely withdraw defense counsel from the underlying cases. Delta further contends that the method of sharing defenses costs is set out under Florida law, while Royal disagrees.

---

policies are not directly relevant here, except to the extent that they relate to Royal's counterclaim, which will be discussed *infra*.

*Case No.: 3:05-CV-108/RV/MD*

In addition, a second sub-set of claims exists in which claims span both of the Royal primary policy periods. For those claims, Royal charged Delta a deductible under each policy. According to Delta, Royal charged the separate deductibles but refused to "stack" the two policies, which would have had the effect of doubling the limits of coverage. Royal argues that the charging of multiple deductibles was proper under the terms of the policies, and, furthermore, they were "with the specific agreement and consent of Delta." Delta disputes that claim, arguing that the imposition of multiple deductibles without stacking the policy limits "is both improper and unlawful."

Delta filed this declaratory judgment and breach of contract action to address and resolve the disputes noted above, among several others. Royal filed a counterclaim seeking to recover monies it paid under the umbrella policies, and it seeks to recover attorney fees it incurred in prosecuting that counterclaim.

## II. DISCUSSION

As noted, there are three sets of motions now pending: (1) cross motions for summary judgment, (2) Delta's motions to strike, and (3) Delta's motion to amend. These motions will be addressed in reverse order below.

### A. Motion to Amend

Delta moves to amend or supplement its answer and affirmative defenses to Royal's counterclaim (doc. 103). Specifically, Delta seeks to affirmatively plead and aver that the counterclaim is barred by *res judicata*. I am sympathetic to Royal's argument in opposition to this motion, which appears to primarily be that Delta waited more than two years (and thus too long) to amend. But, as I stated at the recent summary judgment hearing, I am less interested in "procedural niceties" in this case than I am in having the case resolved on its own merits. The motion to amend, therefore, is GRANTED.

**B.     Motions to Strike**

Delta has filed three motions to strike documents submitted by Royal. Delta contends, *inter alia*, that Royal's memorandum of law in opposition to Delta's motion for summary judgment should be struck because it was filed four days late; two affidavits filed in support of that opposition --- one of which, it must be noted, has already been withdrawn (doc. 72) --- should be struck because the testimony conflicts with other evidence; and two subsequently-filed "corrected" affidavits should be struck because they were filed two weeks late (docs. 51, 60 and 74). Delta has recently moved to "renew" these motions to strike (doc. 102). Again, I believe this case should be resolved on its merits. The affidavits can, and should, be evaluated as a part of the consideration of the summary judgment motions, and there is no need for them to be struck. These motions are DENIED.

**C.     Cross Motions for Summary Judgment**

*(i) Standard of Review*

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

However, summary judgment is inappropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 594 (11th Cir. 1995). An issue of fact will be

"material" if it might affect the outcome of the case under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find in favor of the non-moving party. Id. On summary judgment, the record evidence and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non-moving party. National Fire Ins. Co. of Hartford v. Fortune Const. Co., 320 F.3d 1260, 1267 (11th Cir. 2003).

*(ii) Analysis*

Jurisdiction in this case is based on diversity of citizenship. Therefore, I must apply the substantive law of the State of Florida. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). As a preliminary matter, the parties have cited cases that they believe support their respective legal arguments. While some of these cases --- as well as cases I located during my own research --- may address one or more of the relevant issues, I am not satisfied that any case directly addresses the precise situation at hand. The cited cases are either from other state courts, see, e.g., Northern States Power Co. v. Fidelity & Casualty Co. of New York, 523 N.W.2d 657 (Minn. 1994); Continental Casualty Co. v. Medical Protective Co., 859 S.W.2d 789 (Ct. App. Mo. 1993); they are from courts in other circuits, see, e.g., Ball v. NCRIC, Inc., 120 Fed. Appx. 965 (4th Cir. 2005); Commercial Underwriters Ins. Co. v. Royal Surplus Lines Ins. Co., 345 F. Supp. 2d 652 (S.D. Tex. 2004); they are from this circuit, but they apply other state law, see, e.g., Commercial Union Ins. Co. v. Sepco Corp., 765 F.2d 1543 (11th Cir. 1985) (applying Alabama law); Porter v. American Optical Corp., 641 F.2d 1128 (5th Cir. 1981) (applying Louisiana law); they address related indemnity issues, but not defense obligations and a self-insured period, see, e.g., Gulf Ins. Corp. v. Continental Casualty Co., 464 So.2d 207 (Fla. 3d DCA 1985); or, as I emphasized during the recent hearing in this matter, they can be distinguished and limited on

the facts because they arise in the unique asbestos context, see, e.g., Insurance Co. of North Am. v. Forty-Eight Insulations, Inc., 633 F.2d 1212 (6th Cir. 1980); Sepco Corp., *supra*, 765 F.2d at 1543.

More significant than the disputed issues of law are the disputed issues of fact. Indeed, when narrowed down, the legal issues are not overly complex. However, the facts are numerous and complicated, and they differ in each of the underlying cases. To resolve this case I must, as a threshold matter, examine at least forty-one (41) cases --- each of which involves its own disputed facts --- and determine when the medical incident at issue first occurred (i.e., under what policy) and whether subsequent incidents that may span different policies relate to that initial incident. It seems clear that how the coverage applies can only be determined after engaging in this case-by-case analysis. The crux of the case appears to be what constitutes a related medical incident, and I cannot make this determination as a matter of law. The disputed facts are so intertwined with the legal arguments that I cannot say that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c). The cross motions for summary judgment (doc. 40 and 41) must be, and are, DENIED.[3]

---

[3] Although I believe that summary judgment is inappropriate on this record, I make the following observations. First, to the extent that a claim or suit arises out of a medical incident that occurred during one specific Royal primary period --- and if there is no allegation of a "related" medical incident in another primary period --- then, as Royal conceded at the hearing, "Delta doesn't owe a dime." Royal must defend and Delta is not responsible for the costs related thereto. Similarly, if there are both covered and non-covered claims, Royal must defend the whole action. The law is well settled, and the parties agree, that the duty to defend is broader than the duty to indemnify. However, if the action plainly falls outside of (and does not otherwise implicate) the policy, then Royal does not have the duty to defend or indemnify under the policy. The problem, of course, is what to do when a claim or suit spans multiple policy periods. To the extent that Royal argues the defense

**D.      Pre-Trial Settlement**

This case is scheduled for a pre-trial conference on February 14, 2008, with a jury trial to begin shortly thereafter, on March 3, 2008. I indicated at the summary judgment hearing that because there was insufficient time to order the parties to mediation, I would not do it by formal order. However, I did encourage the parties to mediate and/or informally discuss settlement. The parties have since informed the court that they recently mediated this case without success. However, it seems apparent that all reasonable efforts should be made to settle. This case --- which, as noted, will seemingly involve dozens of mini-trials --- will be difficult for the attorneys to try, and even more difficult for a jury to comprehend. Moreover, regardless of the verdict, an appeal is likely, as in the umbrella case. That will prolong and delay resolution of this already long-pending case. Therefore, the parties and counsel are encouraged to continue their settlement efforts.

**III.     CONCLUSION**

For the foregoing reasons, Delta's motion to amend (doc. 103) is GRANTED. Delta's motions to strike (docs. 51, 60, and 74, as "renewed" by doc. 102) are each DENIED. The parties' cross motions for summary judgment (docs. 40 and 41)

---

costs in this situation should be split based on Delta's "agreement," that claim is unavailing. The record reflects that, at least for incidents that Royal had a legal duty to defend, the "agreement" was clearly coerced and Royal was wrong to threaten to withdraw its defense counsel. Royal, as noted, was obligated to defend until its claims were resolved. Furthermore, for any claim that arises under the self-insurance period, Delta stands in the shoes of the primary carrier (Lexington) and is responsible for the first $1,000,000. (In this context, I find that the umbrella coverage issues and Delta's obligations under the self-insurance period are *res judicata*. As determined by the Eleventh Circuit, Delta was responsible for $1,000,000 and pro rata defense costs for the claims that arose during that period.). If the claim involves separate medical incidents that are not "related," the policies should be stacked and two deductibles would apply. I note that Royal's "time on the loss" contention is unpersuasive. It has been applied in asbestos cases, but there is no indication that is the law in Florida.

*Case No.: 3:05-CV-108/RV/MD*

*Page 10 of  10*

are also DENIED. The parties are again encouraged to try and settle this matter; otherwise, jury selection and trial will begin on **March 3, 2008.**

DONE and ORDERED this 1st day of February, 2008.

/s/ *Roger Vinson*
**ROGER VINSON**
**Senior United States District Judge**

*Case No.: 3:05-CV-108/RV/MD*